UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

UNITED STATES                                                                    PLAINTIFF

v.                                                          Criminal Action No. 3:19-cr-165-JRW

WINFRED LEWIS                                                                    DEFENDANT

## ORDER

The Court **DENIES** Lewis's request for a hearing and **DENIES** Lewis's motion to revoke his detention order. (DN 75).

## OPINION

A grand jury indicted Winfred Lewis for conspiring to possess with the intent to distribute Fentanyl and for being a felon in possession of a firearm.[1]  In February 2020, after a contested detention hearing, Magistrate Judge Edwards ordered Lewis detained until trial.[2]  The next month, Lewis moved for release, for a telephonic hearing, and for a telephonic evidentiary hearing.[3]  Judge Edwards denied his motions.[4]  Two days later, on May 20, Lewis filed another motion to revoke his detention and requested a hearing.[5]

---

[1] DN 1.
[2] DN 42.
[3] DN 51; DN 54; DN 61.
[4] DN 74.
[5] DN 75.

\*   \*   \*

Since 2007, Winfred Lewis has been convicted numerous times. Many of those were drug-related counts. Several of those were trafficking convictions. Several of his other convictions were for fleeing or evading authorities. He has also violated probation. And he's violated parole.

It is of course possible that Lewis has changed his ways.

But a possibility isn't enough. His current federal charge for drug trafficking creates a rebuttable presumption in favor of detention.[6] Nothing about his history rebuts that presumption. When he was detained in February, there was clear and convincing evidence that he is a danger to the community and a flight risk.[7] And there's still just as much evidence now as there was then.

Lewis wants a hearing on his motion to revoke his detention.[8] But the point of a hearing is to resolve factual disputes. Here, there are none – or at least none that matter.[9] That's because, since his February detention, only two things have allegedly changed, and neither justifies his release.

First, Lewis alleges that his mother will let him live with her. That may be a factor in whether he is a danger to the community and whether he is a flight risk. But it is not a dispositive factor. Even assuming the best about his mother's home and her supervision, it is not a jail. And when a defendant has Lewis's current charge, criminal history, and history of flight, pre-trial detention makes sense.

---

[6] DN 42; *See* 18 U.S.C. § 3142(e)(3).
[7] DN 42; *See* 18 U.S.C. § 3142(f).
[8] DN 75.
[9] *See* 18 U.S.C. § 3142(f).

Second, Lewis alleges that some detainees at his jail have COVID-19.[10] But even assuming that there are, as Lewis alleges, approximately 20 detainees at his jail with COVID-19, that alone is not enough to justify his release. When a pre-trial detainee requests release for COVID-19 concerns, "under 18 U.S.C. §§ 3142(f)(2), 3142(g), and 3142(i), courts should make a specific determination for each defendant based on (1) the original grounds for detention, (2) the specificity of the defendant's concerns, (3) the details of his proposed plan for release, and (4) the likelihood of increasing COVID-19's risk to others."[11]

Here, (1) the original grounds for detention remain, and (2) none of Lewis's COVID-19 concerns are specific to him. He has no health conditions that put him uniquely at risk, and everything about his argument applies equally to every detainee at his jail. (3) Although he has proposed a plan for home incarceration, it does not materially alter the February assessment regarding his danger to the community and his risk of flight. And, (4) releasing Lewis "would increase the risk of spreading COVID-19, since it injects someone from one environment (jail) into a new environment (not jail). In other words, it would mean socially mixing when everyone else is socially distancing."[12]

*Justin R. Walker*

Justin R Walker, District Judge
United States District Court

6/8/2020

---

[10] DN 75. The Government argues that Lewis's jail, the Grayson County Detention Center, is continuing to implement "previously outlined steps to counter the risk of exposure, such as suspending inmate visitation and monitoring inmates and employees for symptoms of respiratory infection." DN 79 at #244. Lewis does not dispute this. *See* DN 82.

[11] *United States v. Dewitt*, No. 3:19-CR-158-JRW, 2020 WL 1917340, at *2 (W.D. Ky. Apr. 20, 2020) (citing *United States v. Shelton*, No. 3:19-CR-14-RGJ, 2020 WL 1815941, at *4 (W.D. Ky. Apr. 9, 2020); *see also United States v. Stephenson*, No. 3:20-CR-18-CRS, 2020 WL 1811353, at *3 (W.D. Ky. Apr. 8, 2020) (the court "must make a particularized finding of necessity" under 18 U.S.C. § 3142(i), which provides for temporary release for a compelling reason).

[12] *Dewitt*, 2020 WL 1917340, at *3.

*   *   *

As this Court stated in April:

> Nothing in this opinion should obscure three obvious points.  First, no one questions the severity of the current pandemic.  Second, jails should take precautions to protect detainees as much as possible, as [Lewis's] jail has done.  Third, pandemic or no pandemic, many defendants awaiting trial should not be detained.
>
> But when a pretrial detainee is at the same risk from COVID-19 as the rest of the prison population, COVID-19 is no reason for release.  Otherwise, federal courts would have to release more than 60,000 pretrial detainees.  That would be a recipe for violence and mayhem.[13]

---

[13] *Id*. (footnotes omitted).